IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| GEORGE MCDONALD and DIANA SCHAFFER, individually and on behalf of their minor child, G.S., | **MEMORANDUM DECISION AND ORDER** |
| Plaintiffs, | |
| v. | Case No. 2:15-cv-00283 |
| UNIVERSITY OF UTAH, CHERYL WRIGHT, SCOTT WRIGHT, M. DAVID RUDD, RUSS ISABELLA, DESERET DIGITAL MEDIA, INC., DESERET NEWS, DESERET NEWS PUBLISHING COMPANY, RICHARD D. HALL, and PAUL S. EDWARDS, | Judge Robert J. Shelby |
| Defendants. | |

This case arises out of a *Deseret News* article published in early 2013 about a University of Utah education program called iSTAR. The article contained a photograph of minor G.S.'s face, the caption of which identified him by name and incorrectly stated that he has autism.

Based on the article, G.S. and his parents, George McDonald and Diana Schaffer, assert against the University of Utah and the four University of Utah employees responsible for iSTAR (University Defendants) several state claims and a federal claim. Plaintiffs bring similar claims against Deseret Media, Inc., Deseret News, Deseret News Publishing Company, and two Deseret employees responsible for the article's publication (Deseret Defendants).

The Deseret Defendants and the University Defendants separately move for judgment on the pleadings. The court grants both motions in part, dismissing the sole federal claim asserted

against the Deseret Defendants and the University Defendants.  The court declines to exercise supplemental jurisdiction over the remaining state claims, and remands the case to state court.

## BACKGROUND[1]

G.S. is an intellectually gifted child with extraordinary visual-spatial skills.  In late 2010, G.S. began attending a University of Utah education program called iSTAR.  iSTAR focuses on neurodiverse youth with atypical brain development or function, and strives to help those youth reach their full potential by emphasizing spatial-visual skills.  Professor Cheryl Wright, Professor Scott Wright, Chair of the Department of Family and Consumer Studies Russ Isabella, and then Dean of the College of Social and Behavioral Science M. David Rudd were responsible for the program's formation and supervision.

G.S. excelled in the program, and became a role model for other participants.  Although most program participants had autism, the University Defendants knew G.S. had neither autism nor any other autism spectrum disorder.  Indeed, Schaffer, G.S.'s mother, told Professor Cheryl Wright that G.S. does not have autism, and that he was not to be depicted in any local media.

Professors Cheryl and Scott Wright hosted a media workshop and an evening seminar on January 3, 2013, to promote iSTAR.  In attendance was a photographer from the *Deseret News*, a newspaper of general circulation published in the Salt Lake City area.  The professors told the *Deseret News* photographer that all the children enrolled in iSTAR, including G.S., had autism.

G.S. and McDonald, G.S.'s father, attended the evening seminar.  While at the seminar, the *Deseret News* photographer took a photograph of G.S. without McDonald's knowledge or consent.  Professor Cheryl Wright encouraged G.S. to pose for the *Deseret News* photographer

---

[1] Because this matter is before the court on motions for judgment on the pleadings, the court accepts as true the well-pleaded factual allegations in Plaintiffs' Amended Complaint and views those facts in the light most favorable to Plaintiffs as the nonmoving parties.  *See Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000).

while McDonald was not looking.

On January 7, 2013, the *Deseret News* published a print and an online article about iSTAR. The print version of the article contained a clearly identifiable color photograph of G.S.'s face. The photograph's caption identified G.S. by name and labeled him autistic.

Plaintiffs sued the University Defendants and the Deseret Defendants in Utah state court based on the article's publication in the *Deseret News*. Plaintiffs assert state claims for breach of contract, breach of the implied covenant of good faith and fair dealing, defamation, abuse of personal identity, intentional infliction of emotional distress, false light invasion of privacy, public disclosure of private facts, and negligent supervision. Plaintiffs also claim under 42 U.S.C. § 1983 that Defendants deprived Plaintiffs of their First and Fourteenth Amendment rights guaranteed by the United States Constitution. Defendants timely removed the case to this court.

## LEGAL STANDARD

The Deseret Defendants and the University Defendants now separately move under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings. Courts evaluate motions for judgment on the pleadings under Rule 12(c) using the same standard applicable to motions to dismiss for failure to state a claim under Rule 12(b)(6).[2] To survive a Rule 12(b)(6) motion to dismiss, Plaintiffs must "state a claim upon which relief can be granted," meaning Plaintiffs must allege "enough factual matter, taken as true, to make [their] 'claim to relief . . . plausible on its face.'"[3] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[4]

---

[2] *Id.*

[3] *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

While the court "accept[s] all well-pleaded facts as true and view[s] them in the light most favorable" to Plaintiffs,[5] the court will not accept as true "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[6]

## ANALYSIS

The court's analysis proceeds in three parts. The court first analyzes Plaintiffs' § 1983 claim against the Deseret Defendants, before discussing Plaintiffs' § 1983 claim against the University Defendants. Concluding that the § 1983 claims should be dismissed, the court then explains why it declines to exercise supplemental jurisdiction over the remaining state claims.

## I. Deseret Defendants

Plaintiffs allege under 42 U.S.C. § 1983 that the Deseret Defendants deprived Plaintiffs of their First and Fourteenth Amendment rights guaranteed by the United States Constitution when they published the article in the *Deseret News*. The Deseret Defendants urge the court to dismiss Plaintiffs' § 1983 claim because Plaintiffs have inadequately alleged that the Deseret Defendants, as private entities, are state actors. The court agrees.

A plaintiff asserting a § 1983 claim must adequately allege state action.[7] For a private party's conduct to constitute state action, the constitutional deprivation "must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible," and "the [private] party charged with the deprivation must be a person who may fairly be said to be a state actor."[8] The Supreme Court has identified four tests to determine whether private parties, like the Deseret Defendants, may

---

[5] *Jordan-Arapahoe, LLP v. Bd. of Cnty. Comm'rs*, 633 F.3d 1022, 1025 (10th Cir. 2011) (quoting *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005)).

[6] *Iqbal*, 556 U.S. at 678.

[7] *See Anderson v. Suiters*, 499 F.3d 1228, 1232 (10th Cir. 2007).

[8] *Johnson v. Rodrigues*, 293 F.3d 1196, 1202 (10th Cir. 2002) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

fairly be said to be state actors: "(1) the public function test, (2) the nexus test, (3) the symbiotic relationship test[,] and (4) the joint action test."[9] "Under each of these four tests, 'the conduct allegedly causing the deprivation of a federal right' must be 'fairly attributable to the State.'"[10]

Plaintiffs here invoke only the joint actor test. State action exists under that test "if the private party is a willful participant in joint action with the State or its agents."[11] This inquiry focuses on whether state officials and private entities "acted in concert" in causing a deprivation of constitutional rights.[12] Courts have found joint action where there is a "substantial degree of cooperative action between state and private officials," where "there is overt and significant state participation in carrying out the deprivation of the plaintiff's constitutional rights," or where state and private actors "share a specific goal to violate the plaintiff's constitutional rights by engaging in a particular course of action" giving rise to the violation.[13] To the contrary, courts have found no joint action where either a state official or a private actor independently decides to perform an unconstitutional act notwithstanding the other's assistance.[14]

Plaintiffs argue that joint action exists because the University Defendants participated in or influenced the Deseret Defendants' decision to publish G.S.'s photograph and to label him autistic. In the alternative, Plaintiffs maintain that there was a substantial degree of cooperation

---

[9] *Id.*

[10] *Gallagher v. "Neil Young Freedom Concert,"* 49 F.3d 1442, 1447 (10th Cir. 1995) (quoting *Lugar*, 457 U.S. at 937).

[11] *Anderson*, 499 F.3d at 1233 (citation omitted) (internal quotation marks omitted).

[12] *Id.* (citation omitted) (internal quotation marks omitted).

[13] *Gallagher*, 49 F.3d at 1454–55 (citations omitted) (internal quotation marks omitted).

[14] *See id.* at 1454 (discussing *Carey v. Continental Airlines Inc.*, 823 F.2d 1402 (10th Cir. 1987) and *Lee v. Town of Estes Park*, 820 F.2d 1112 (10th Cir. 1987)); *see also Anderson*, 499 F.3d at 1233 (finding no joint action between a media outlet and a state officer where plaintiff failed to allege that the state officer obtained editorial control over the use of a confidential videotape); *Espinoza v. Walgreen Co.*, 2009 WL 2843345, at *3 (D. Utah Aug. 25, 2009) (finding no joint action where plaintiff alleged no facts indicating that the state officers' failure "to conduct an independent investigation was the product of a conspiracy, prearranged plan or customary arrangement between the [private party] and the police").

between the University Defendants and the Deseret Defendants.[15]

The Tenth Circuit's decision in *Anderson v. Suiters* is instructive.  In *Anderson*, the plaintiff sued a reporter and a media outlet for which the reporter worked under § 1983 after the media outlet broadcast a videotape showing the plaintiff being raped.[16]  The Tenth Circuit concluded that the plaintiff inadequately pleaded that the media defendants acted jointly with the state officer who received the videotape from the plaintiff to violate her right to privacy.[17]  The plaintiff did not allege that the media defendants knew the plaintiff turned the videotape over to the officer on a condition of confidentiality.[18]  Nor did the plaintiff allege enough facts showing that the officer and the media defendants had a shared purpose.[19]  The plaintiff's allegations instead indicated that "the parties had their own, separate goals: [the officer] wanted to appear on camera, and the media defendants wanted exclusive access to the investigation."[20]  The plaintiff also failed to allege that the officer or any other state actor obtained editorial control over the media defendants' use of the videotape.[21]  And while the plaintiff alleged that the officer called the plaintiff on the reporter's behalf to encourage her to speak with the reporter, that fact did not show joint action to violate the plaintiff's right to privacy by airing sexually explicit portions of the videotape.[22]

A similar result is warranted here.  Plaintiffs have not alleged that the Deseret Defendants knew Schaffer told the University Defendants that G.S. is not autistic, and that he was not to be depicted in any local media.  Nor have Plaintiffs alleged that the state officials and private actors

---

[15] Plaintiffs also twice allege in a conclusory fashion that the Deseret Defendants engaged in joint action with the University Defendants to deprive Plaintiffs of their constitutional rights.  But threadbare, conclusory statements are insufficient to survive a challenge under Rule 12(c), and are entitled to no weight.  *See Iqbal*, 556 U.S. at 678.

[16] *Anderson*, 499 F.3d at 1231.

[17] *Id.* at 1233.

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.* at 1234.

shared the common purpose of violating Plaintiffs' constitutional rights. While Plaintiffs allege that the University Defendants and the Deseret Defendants both shared the legitimate goal of publicizing iSTAR, that factual allegation alone does not show joint action to do the allegedly unconstitutional act of publishing G.S.'s photograph with a caption labeling him autistic.

To be sure, Plaintiffs allege the University Defendants invited the Deseret Defendants to the media event and provided the Deseret Defendants with information concerning G.S. But this is unsurprising, and describes nothing more than normal media activities. Indeed, "[w]ithout more, a reporter does not become a state actor . . . simply because she has received and published information from a governmental official."[23]

Plaintiffs contend that they have alleged the something "more" required to establish joint action. They assert that (1) the University Defendants "directed" the *Deseret News* photographer to take photographs of G.S., and that (2) the Deseret Defendants published what the University Defendants asked to be published without performing an independent inquiry or investigation. Neither assertion is supported by the allegations in Plaintiffs' Amended Complaint.

First, Plaintiffs actually allege that the University Defendants encouraged G.S. to pose for the *Deseret News* photographer—not that the University Defendants directed the photographer in any way. But even if Plaintiffs adequately alleged that the University Defendants directed the *Deseret News* photographer to take G.S.'s photograph, that fact would not show joint activity to do the allegedly unconstitutional act of publishing G.S.'s photograph and labeling him autistic.[24] At most, it would show joint activity to take a photograph of G.S., an act not forming the basis for Plaintiffs' § 1983 claim against the Deseret Defendants.

---

[23] *Id.* at 1233 (citation omitted) (internal quotation marks omitted).
[24] *See id.* at 1234 (concluding that although the state officer called plaintiff on a reporter's behalf to encourage plaintiff to speak with the reporter, this fact did not show joint action to violate plaintiff's constitutional right to privacy by airing sexually explicit portions of a confidential videotape).

Second, Plaintiffs do not allege anywhere in their Amended Complaint that the Deseret Defendants published what the University Defendants asked them to publish. In any event, it would not show that the Deseret Defendants relinquished to the University Defendants editorial control over what to publish.[25] It would instead establish that the University Defendants made a request, and that the Deseret Defendants exercised editorial discretion to publish an article in accordance with that request using photographs and information obtained from the event.

Plaintiffs have failed to allege sufficient facts to establish that the Deseret Defendants "may fairly be said to be a state actor."[26] As a result, Plaintiffs' § 1983 claim against the Deseret Defendants is dismissed.

## II. University Defendants

Plaintiffs next claim under § 1983 that the University Defendants violated Plaintiffs' First and Fourteenth Amendment rights guaranteed by the United States Constitution when they told the Deseret Defendants that G.S. is autistic. In response, the University Defendants contend that the affirmative defense of qualified immunity shields them from liability.[27] The court agrees.

The qualified immunity defense shields state officials performing discretionary functions from money damages unless their conduct was unreasonable in view of clearly established law.[28] The doctrine gives state officials "breathing room to make reasonable but mistaken judgments about open legal questions."[29] And "[w]hen properly applied, it protects all but the plainly incompetent or those who knowingly violate the law."[30]

When a state official raises qualified immunity, the plaintiff bears a "heavy two-part

---

[25] *See id.* at 1233.
[26] *Rodrigues*, 293 F.3d at 1202 (citation omitted) (internal quotation marks omitted).
[27] The parties agree that the University of Utah is not a "person" and therefore may not be sued under § 1983. To the extent Plaintiffs assert a § 1983 claim against the University, that claim is dismissed.
[28] *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).
[29] *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011).
[30] *Id.* (citation omitted) (internal quotation marks omitted).

burden"[31] to plead facts showing "(1) that the [state] official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[32] A plaintiff must satisfy both parts of the analysis to overcome the defense,[33] and the court has discretion to decide which part to address first.[34]

To show that a right was "clearly established," a plaintiff must demonstrate that "the contours of [the] right [were] sufficiently clear that every reasonable official would have understood that what he is doing violates that right."[35] This inquiry "must be undertaken in light of the specific context of the case."[36] And "the right allegedly violated must be established, not as a broad general proposition, but in a particularized sense so that the contours of the right are clear to a reasonable official."[37]

Ordinarily, a right is clearly established if there is a Supreme Court or Tenth Circuit decision on point, or if the "clearly established weight of authority from other courts"[38] puts "the statutory or constitutional question beyond debate."[39] That said, "[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation."[40] And in the end, the "dispositive inquiry" is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[41]

Plaintiffs allege that the University Defendants deprived them of three constitutional

---

[31] *Phillips v. James*, 422 F.3d 1075, 1080 (10th Cir. 2005).
[32] *al-Kidd*, 131 S. Ct. at 2080.
[33] *Morris v. Noe*, 672 F.3d 1185, 1191 (10th Cir. 2012).
[34] *al-Kidd*, 131 S. Ct. at 2080.
[35] *Id.* at 2083 (citation omitted) (internal quotation marks omitted).
[36] *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).
[37] *Reichle v. Howards*, 132 S. Ct. 2088, 2094 (2012) (citations omitted) (internal quotation marks omitted).
[38] *Morris*, 672 F.3d at 1196 (citation omitted) (internal quotation marks omitted).
[39] *al-Kidd*, 131 S. Ct. at 2083.
[40] *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004).
[41] *Saucier*, 533 U.S. at 202.

rights: (A) the Fourteenth Amendment right of parents to direct their child's education, (B) the

Fourteenth Amendment right to privacy, and (C) the First Amendment right against compelled

speech.  The court addresses each in turn.

## A.   Fourteenth Amendment Right of Parents' to Direct Their Child's Education

The Fourteenth Amendment's Due Process Clause states that no State shall "deprive any

person of . . . liberty . . . without due process of law."[42]  The "liberty" protected by the so-called

substantive component of the Due Process Clause includes "the fundamental right of parents to

make decisions concerning the care, custody, and control of their children."[43]  This interest also

includes the right of parents to "direct the upbringing and education of [their] children."[44]

Plaintiffs contend that the University Defendants interfered with G.S.'s parents' "well-

established fundamental right to direct [G.S.'s] education without state interference" by "labeling

G.S. as autistic and doing so in a way that informed him and his [non-iSTAR private] school of

that label."[45]  Plaintiffs point to two district court decisions outside the Tenth Circuit in support:

*Rhoades v. Penn-Harris-Madison School Corp.*[46] and *Merriken v. Cressman*.[47]

In *Rhoades*, the court concluded that a psychological examination administered to

students with the school's help implicated the parent-plaintiffs' right to direct their daughter's

---

[42] U.S. Const. amend. XIV, § 1.

[43] *Troxel v. Granville*, 530 U.S. 57, 66 (2000).

[44] *Id.* at 65 (quoting *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534–35 (1925)).

[45] Dkt. 33 at 15.  Although Plaintiffs invoked in their Amended Complaint the Fourteenth Amendment's Due Process Clause in the context of the right of privacy, the University Defendants correctly note that Plaintiffs did not specifically allege that the University Defendants violated McDonald's and Schaffer's Fourteenth Amendment right to direct their child's education.  Of course, procedural fairness questions arise when pleadings do not give notice of the theory behind a claim.  But when pleading a § 1983 claim, a plaintiff need only allege that "some person has deprived him of a federal right," and that "the person who has deprived him of that right acted under color of state or territorial law."  *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).  A plaintiff is not required to anticipate defenses in their pleadings—even predicable ones like qualified immunity.  *See id.*  As a result, a defendant who asserts qualified immunity can reasonably expect a responding plaintiff to expand and detail the theory of his case.  The court declines to apply a strict approach to waiver in view of these general principles, Federal Rule of Civil Procedure 8(e)'s instruction that "[p]leadings must be construed so as to do justice," and the Tenth Circuit's "strong preference for the disposition of litigation on the merits," *Gulley v. Orr*, 905 F.2d 1383, 1386 (10th Cir. 1990).

[46] 574 F. Supp. 2d 888 (N.D. Ind. 2008).

[47] 364 F. Supp. 913 (E.D. Pa. 1973).

upbringing and education, where the daughter took the exam without her parents' consent and she was informed in front of her peers after taking the exam that she had obsessive-compulsive disorder and social anxiety disorder.[48]  Similarly, the *Merriken* court concluded that a school-administered survey that asked personal questions concerning students' relationships with their parents violated the student's and his mother's right to privacy relating to family relationships and child rearing.[49]

These cases suggest that a parent's right to direct her child's upbringing and education is implicated when a public school directly provides to or extracts from the child sensitive, personal information.  Yet here, the Deseret Defendants—not the University Defendants—published the article that publicly labeled G.S. autistic, and informed him and others of that label.  Plaintiffs do not explain how *Rhoades* and *Merriken* apply on the facts alleged here, where information from outside the school walls adversely affected G.S.'s education.  And so to the extent there was any interference with McDonald's and Schaffer's right to direct G.S.'s education, it was the Deseret Defendants that caused the interference.  But as discussed, the Deseret Defendants are not state actors, severing any link between the purported interference and the University Defendants.  Plaintiffs have not sufficiently alleged that the University Defendants deprived G.S.'s parents of their Fourteenth Amendment right to direct his education.

Even if Plaintiffs have adequately alleged a constitutional violation, they have not shown that the asserted right is clearly established.  While Plaintiffs note that a parent's right to direct her child's education without state interference is clearly established as a general proposition, they fail to demonstrate that the right is clearly established in a particularized sense in light of the specific facts of this case.  Plaintiffs identify no Supreme Court or Tenth Circuit case on point.

---

[48] 574 F. Supp. 2d at 891–99.
[49] 364 F. Supp. at 918–22.

And it is far from clear how *Rhoades* and *Merriken* apply to the very different facts here. Even so, the two district court decisions from outside the Tenth Circuit fall short of demonstrating that the clearly established weight of authority from other courts has put the constitutional question beyond debate. In short, it would not have been clear to a reasonable official in the University Defendants' position that his conduct was unlawful in the situation he confronted.

The University Defendants are entitled to qualified immunity on this claim.

## B. Fourteenth Amendment Right to Privacy

The liberty component of the Fourteenth Amendment's Due Process Clause also includes "the individual interest in avoiding disclosure of personal matters."[50] Plaintiffs contend that the University Defendants violated G.S.'s right against disclosure of personal matters when they disclosed to the Deseret Defendants the untrue medical diagnosis that he is autistic.[51]

Plaintiffs again rely on *Rhoades* in support. Similar to its ruling concerning the right of parents to direct their child's upbringing and education, the *Rhoades* court concluded that the individual interest in avoiding disclosure of personal matters was implicated where the school helped administer a psychological exam that extracted highly personal and private information from parent-plaintiffs' daughter without the parents' or daughter's valid consent.[52]

*Rhoades* is distinguishable because it did not involve the disclosure or extraction of an untrue fact. While Plaintiffs suggest that it is immaterial whether the disclosed fact was true or untrue, they cite to no authority in support of that proposition. Indeed, it is difficult to see how the interest in avoiding disclosure of personal matters is implicated when the disclosed fact is not

---

[50] *Whalen v. Roe*, 429 U.S. 589, 599 (1977).
[51] As should be clear from the discussion to this point, for purposes of the court's § 1983 analysis the University Defendants were not responsible for the Deseret Defendants' disclosure of the allegedly false diagnosis that G.S. is autistic. As a result, the only "disclosure" for which the University Defendants are responsible is their disclosure to the Deseret Defendants.
[52] 574 F. Supp. 2d at 899–904.

even a true personal matter at all. At bottom, Plaintiffs seek to assert a § 1983 claim based on an allegedly false and defamatory statement. But "injury to reputation by itself [is] not a 'liberty' interest protected under the Fourteenth Amendment."[53] And while "[d]efamation . . . is a tort actionable under the laws of most States, [it is] not a constitutional deprivation."[54]

Plaintiffs have not adequately alleged that the University Defendants violated a right that the Fourteenth Amendment's right to privacy protects.[55] The University Defendants are entitled to qualified immunity on this claim.

## C. First Amendment Right Against Compelled Speech

The First Amendment's right to free speech "prohibits the government from compelling speech."[56] This right to be free from compelled speech applies to "statements of fact the speaker would rather avoid."[57] "[A] threshold element of [a compelled speech] claim is coercion or compulsion" by the government.[58]

Plaintiffs maintain that the University Defendants "compelled Plaintiffs to make a statement of fact with which they do not agree and wished to avoid" by "compelling Plaintiffs

---

[53] *Siegert v. Gilley*, 500 U.S. 226, 233 (1991) (citing *Paul v. Davis*, 424 U.S. 693, 708–09 (1976)).

[54] *Id.*

[55] Plaintiffs argue that they may plead that G.S. was autistic in the alternative. After all, there is a "general principle that a party may plead claims in the alternative, even if the claims appear to be facially contradictory." *Gulf Coast Shippers Ltd. P'ship v. DHL Exp. (USA), Inc.*, 2015 WL 4557573, at *19 (D. Utah July 28, 2015); *see also* Fed. R. Civ. P. 8(d)(2)–(3) (allowing a party to "set out 2 or more statements of a claim or defense alternatively or hypothetically," and stating that "[i]f a party makes alternative statements, the pleading is sufficient if any one of them is sufficient," regardless of number). But this principle applies to the legal theory advanced on a given set of facts. It does not allow a party to plead two different sets of factual allegations. And a plaintiff may not repeatedly and consistently allege one thing to be true in support of one claim, while at the same time selectively alleging the exact opposite fact in support of another claim. *See* Fed. R. Civ. P. 8(e) (stating that "[p]leadings must be construed so as to do justice"). The court declines to entertain Plaintiffs' contention that G.S. was autistic.

[56] *Bauchman v. West High Sch.*, 132 F.3d 542, 558 (10th Cir. 1997); *see also Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1230 (10th Cir. 2009) ("The Supreme Court has long held that the First Amendment's freedom of speech guarantee 'prohibits the government from telling people what they must say.'" (quoting *Rumsfeld v. Forum for Academic & Inst'l Rights, Inc.*, 547 U.S. 47, 61 (2006))).

[57] *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 573 (1995).

[58] *Bauchman*, 132 F.3d at 558; *see also Corder*, 566 F.3d at 1231 ("In order to compel the exercise or suppression of speech, the governmental measure must punish, or threaten to punish, protected speech by governmental action that is regulatory, proscriptive, or compulsory in nature." (citation omitted) (internal quotation marks omitted)).

and G.S. to publicly identify G.S. as autistic."[59]  But the University Defendants did not compel or coerce Plaintiffs into saying anything.  While the University Defendants may have published the false statement that G.S. is autistic to the Deseret Defendants, the University Defendants were not responsible for publishing the article that supposedly compelled Plaintiffs to make a statement of fact they otherwise would have liked to avoid.  Regardless, individuals labeled in an article or in some other public way are not compelled to adopt that label.  Individuals do not lose their freedom to self-identify so easily.  They are free to reject any label ascribed to them, and to continue identifying themselves as they please.  Plaintiffs have not sufficiently alleged that the University Defendants violated their First Amendment right against compelled speech, and the University Defendants are entitled to qualified immunity.

Plaintiffs' § 1983 claim against the University Defendants is dismissed.

## III. Supplemental Jurisdiction

Having dismissed all the federal claims asserted in this action over which the court had original jurisdiction, the court must now decide whether it will exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.

Federal district courts have discretion to exercise supplemental jurisdiction over state law claims after dismissing every claim over which they had original jurisdiction.[60]  If all federal claims are dismissed before trial, federal courts generally should decline to exercise jurisdiction over any remaining state law claims "because notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary."[61]  "[T]he nature and extent of pretrial proceedings, judicial economy, convenience, and fairness" guide the court's

---

[59] Dkt. 33 at 16.
[60] *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009); *see also* 28 U.S.C. § 1367(c)(3) (stating that a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . [it] has dismissed all claims over which it has original jurisdiction").
[61] *Brooks v. Gaenzle*, 614 F.3d 1213, 1229–30 (10th Cir. 2010) (citation omitted) (internal quotation marks omitted).

exercise of its discretion.[62]

Here, there are no compelling reasons for the court to exercise supplemental jurisdiction over the state law claims. First, this case is still in its relatively early stages. No trial date has been set, and this Memorandum Decision and Order addresses two motions for judgment on the pleadings. Second, judicial economy will not be served by retaining jurisdiction. The court has constrained its analysis here to only the federal claims asserted, and the parties' briefing on the state law claims easily can be resubmitted in state court. Third, the remaining state law claims present important issues of state law that are best resolved by state trial and appellate courts. The court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.

The court must next determine whether to dismiss the case or to remand it to state court. A district court has discretion to remand a removed case to state court where all federal claims in the case have been dismissed.[63] The court concludes that remanding this case to state court "best promote[s] the values of economy, convenience, fairness, and comity."[64] Remand allows the parties and the state court to efficiently resolve the remaining state law issues, while saving the parties from expending additional resources refiling the case and repleading the claims.[65]

The court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims, and remands the case to the Third District Court for Salt Lake County.

## CONCLUSION

For the reasons stated above, the court GRANTS IN PART the Deseret Defendants' Motion for Judgment on the Pleadings (Dkt. 17), GRANTS IN PART the University Defendants' Motion for Judgment on the Pleadings (Dkt. 29), and REMANDS the case to the Third District

---

[62] *Thatcher Enter. v. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).
[63] *Cernegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988), *superseded on other grounds by statute as recognized by Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 557 (10th Cir. 2000).
[64] *Id.* at 353.
[65] *See id.*

Court for Salt Lake County.

        SO ORDERED this 11th day of August, 2016.

BY THE COURT:

ROBERT J. SHELBY
United States District Judge